**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0190-16T3

ROBERT KELLY,

      Plaintiff-Appellant,

v.

JAMES SIMPSON, EDEL MCQUAID,
DAN BLACK, MICHAEL MORAN, JOHN
ANDREWS, JAMES HODGES, THOMAS
NOEL, GARY MITTNAUL, DAVID
ALVIN, FRANCIS T. SOLTIS, and the
STATE OF NEW JERSEY,

      Defendants-Respondents.

_____

> Submitted January 25, 2018 – Decided December 4, 2018
>
> Before Judges Simonelli, Haas and Gooden Brown.
>
> On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0667-14.
>
> George J. Cotz, attorney for appellant.
>
> Gurbir S. Grewal, Attorney General, attorney for respondents (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Joel Clymer, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

Plaintiff Robert Kelly appeals from the January 9, 2015, and August 16, 2016 Law Division orders, ultimately dismissing all five counts of his complaint alleging violations of the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2 (counts one, two, and three); violations of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8 (count four); and retaliation in violation of N.J.S.A. 34:13A-5.3 to -5.4 (count five). The January 9, 2015 order dismissed counts one, two, and five, pursuant to Rule 4:6-2(e), for failure to state a claim upon which relief can be granted.[1] The August 16, 2016 order dismissed the remaining counts by summary judgment, pursuant to Rule 4:46-2(c). We affirm.

I.

Plaintiff worked as a maintenance worker and technician with the New Jersey Department of Transportation (DOT) from May 2005 until his termination in May 2013 for insubordination, conduct unbecoming an employee, and incompetence. During his eight-year tenure, he served as a shop steward

---

[1] Although count one was inadvertently omitted from the January 9, 2015 order, plaintiff conceded that count one should have been dismissed as a matter of law. The January 9, 2015 order also partially dismissed count three.

for the Local 195 union, and was disciplined on numerous occasions for improper behavior, all of which were upheld following administrative appeals, or agreed to pursuant to the terms of a settlement agreement.

From April 1, 2007, to March 31, 2009, plaintiff was supervised by Thomas Noel and was suspended five times. Specifically, in October 2007, plaintiff was involved in a verbal altercation with a co-worker and received a one-day suspension without pay for "[c]onduct [u]nbecoming a [p]ublic [e]mployee." In April 2008, plaintiff left the work site without authorization and received another one-day suspension. Additionally, in April 2008, plaintiff, who is Caucasian, made racially offensive remarks to an African-American co-worker, in violation of the New Jersey State Policy Prohibiting Discrimination, and received another one-day suspension for harassment and discrimination. In June 2008, plaintiff disobeyed a supervisor's direct order to end a personal phone call and received another one-day suspension for insubordination. In December 2008, plaintiff again left his assigned work area without authorization and received a two-day suspension.

From April 1, 2009, to March 31, 2010, plaintiff was supervised by Todd Zulin and was suspended twice. His threats of bodily harm to a co-worker in the latter part of 2009 resulted in a three-day suspension for conduct unbecoming a public employee, and his February 2010 use of profanity toward his supervisor

prompted a five-day suspension for insubordination. Plaintiff was next supervised by James Hodges, Assistant Yard Supervisor, from April 1, 2010 through March 31, 2011, during which time plaintiff was suspended for fifteen days for insubordination.

On November 5, 2011, plaintiff was provisionally promoted to Construction and Maintenance Technician in the Underground Electrical Construction Unit. During his provisional promotion, plaintiff was supervised by Daniel Black from November 2011 to March 31, 2012, and John R. Miller from April 1, 2012, to March 31, 2013. In December 2011, plaintiff failed to properly inspect a contractor's work and received a twenty-five-day suspension without pay for neglect of duty.

On March 19, 2012, plaintiff was formally charged with insubordination, incompetency, inefficiency, failure to perform duties, and conduct unbecoming a public employee. The charges were based on plaintiff's ongoing accrual of toll violations in his state-issued vehicle in December 2011 and January 2012, despite repeated warnings from a director, improper behavior towards co-workers and private contractor employees during the installation of a steel pole foundation on April 19, 2012, and incorrect direction to a contractor regarding the location for the construction of a foundation on April 27, 2012. Following a plenary hearing, Hearing Officer (HO) Francis Soltis upheld the charges and

4

supported removal in an April 26, 2013 report. Plaintiff was terminated from his position, effective May 3, 2013, in connection with those charges.[2]

The following year, plaintiff filed a five-count complaint. Named as defendants in their individual capacity and as officers and employees of State government were James Simpson, Commissioner of DOT; DOT supervisors Dan Black, John Andrews, James Hodges, and Thomas Noel; Edel McQuaid, DOT's Employee Relations Coordinator; Michael Moran, DOT's Manager of Construction and Maintenance Engineering; David Alvin, DOT's Equal Employment Opportunity Office Liaison Officer; and Hearing Officers Gary Mittnaul and Francis Soltis. The State of New Jersey was also named as a defendant.

Pertinent to this appeal, in counts two and three, respectively, plaintiff alleged that his termination, as well as the process leading up to it, violated his substantive due process and freedom of speech rights under the NJCRA. Plaintiff asserted the disciplinary process that resulted in seven disciplinary sanctions prior to his ultimate removal was inherently unfair, filled with improprieties, and did not afford him "true due process." Plaintiff alleged that

---

[2] Following HO Soltis' substantiation of the disciplinary charges, plaintiff entered into a settlement agreement to resolve some of the charges, and appealed others to the Office of Administrative Law (OAL). However, plaintiff later withdrew his OAL appeal.

the disciplinary charges were "unjustified, and unsupported by the record," and pointed to other disciplinary charges that were dismissed as unfounded to support his allegations. Plaintiff also alleged he was disciplined in retaliation for acting in his role as shop steward and advocating for union members' rights.

In count four, plaintiff asserted that as a result of his whistleblowing activities, management and labor conspired to retaliate against him in violation of CEPA. Plaintiff's alleged whistleblowing activities included both intra- and inter-agency complaints about favoritism in work assignments; bribery for promotions; mismanagement; misconduct, incompetence, and racial animus by DOT employees; unsafe work conditions; theft of DOT supplies and materials; and intentional damage to DOT equipment. According to plaintiff, in addition to the disciplinary sanctions and ultimate termination, the retaliation included transfers to job sites that posed a hardship for plaintiff, denial of promotional opportunities despite his preferred status as a veteran and high ranking on the civil service list, and the filing of fabricated disciplinary charges against him.

Regarding his whistleblowing activities, in his deposition testimony, plaintiff claimed that during the course of his employment, he made ongoing "whistleblower" reports on various issues of public concern, including theft or disappearance of materials and intentional damage to equipment, together with reports of unsafe working conditions and his suspicions that corruption was

involved in some promotions. For example, according to plaintiff, on June 19, 2009, he filed an Occupational Safety and Health Administration (OSHA) complaint regarding unsanitary conditions at his work site, in which he detailed his complaint to his then supervisor about removing "[b]ird droppings from under [an] over pass" without any protective equipment. On July 27, 2011, he also complained to Area Supervisor Andrews about unsanitary conditions in the break room, restroom, and locker room of one of the buildings. Plaintiff also reported to Andrews the theft or disappearance of various materials, including road salt, bug spray, cleaning supplies, and tick repellant, as well as his suspicion that employees were intentionally damaging equipment by removing wires to avoid work.

Additionally, plaintiff claimed he reported the unfairness of the overtime assignment policy as well as his suspicion that supervisor Black was altering the bid process. Plaintiff also made allegations of racial preference by supervisor Hodges, who was African-American, and alleged misconduct by fellow employees, including one co-worker brandishing a large knife, another defecating in his clothing, and another driving off the road. Plaintiff sent emails directly to Commissioner Simpson detailing his concerns.

Regarding retaliatory conduct, plaintiff recited a litany of retaliatory acts he claimed resulted from his whistleblowing activities, including being

transferred from his preferred work site and being the target of a widespread conspiracy to terminate his employment. As to individual defendants, plaintiff contended that Commissioner Simpson retaliated against him for sending emails "by just giving it out [to other people] . . . instead of calling [into his office] the individuals . . . responsible." Plaintiff alleged that Employee Relations Coordinator McQuaid retaliated against him because "she would[] [not] listen" or "even talk to [him,]" and improperly destroyed her appointment book following her retirement.

Further, according to plaintiff, supervisor Black retaliated against him by telling others that plaintiff had performed a job incorrectly, and manager Moran retaliated against him, along with supervisors Noel and Andrews, for reporting the theft of supplies. Plaintiff also asserted that Andrews retaliated against him by telling Moran about his complaints. Additionally, plaintiff alleged that liaison officer Alvin, an African-American, retaliated against him by discriminating against him, and "attempt[ing] to bully and intimidate [p]laintiff into agreeing to false and fabricated charges." Plaintiff contended further that HO Mittnaul retaliated against him by finding against him in all five disciplinary hearings Mittnaul adjudicated. However, plaintiff admitted that HO Soltis did not retaliate against him, but was rather a "hired gun."

Notably, plaintiff alleged that Moran, Andrews, Hodges, and other individuals conspired to retaliate against him during an audio recorded meeting in October 2011, during which they discussed ways to avoid working with him. The meeting was recorded by maintenance worker Justin Postelle, who gave a copy of the recording to plaintiff. The transcript of the meeting revealed that an unknown participant suggested that employees lie regarding plaintiff's conduct in an attempt to have him disciplined, in hopes that he would be terminated. Plaintiff also cited another meeting in early 2012, during which supervisors, including Black, discussed his possible termination. A participant in that meeting, Ian Maza, a foreman with one of DOT's contractors, provided a certification indicating that these supervisors "pressured" [him] to promise" he would report "any missteps" by plaintiff.

In 2011, plaintiff relayed a number of his complaints to Jeanne Victor, the Human Resources Director. Ultimately, DOT's Human Resources directed HO Edward Sarin to assist with an investigation of plaintiff's disciplinary history and claims of unfair treatment. The investigation resulted in the issuance of a report, which concluded that while "some of the circumstances and procedures employed by members of the [DOT] for disciplinary actions in relation to [plaintiff were] suspect[,] [t]here were times . . . that the credibility of [plaintiff came] into question." Further, according to the report, plaintiff "need[ed] to

understand his position as an employee within the [DOT], and understand that there [was] a chain of command," and that he was "not in the position to tell his co-workers what to do." The report also concluded, however, that the October 2011 recorded meeting where supervisors encouraged "co-workers to lie if necessary for the purpose of having a co-worker terminated, by any means, [was] unacceptable."

On September 12, 2014, defendants filed a motion to dismiss the complaint, or, in the alternative, for partial summary judgment. During oral argument, the parties agreed to dismiss counts one, two, and three as to the State and all individual defendants acting in their official capacity. On January 9, 2015, in a written opinion, Judge Anthony M. Massi dismissed counts one, two, and five with prejudice after "drawing all inferences in favor of the [p]laintiff." The judge also partially dismissed count three as it related to organized labor. After the close of discovery, defendants moved for summary judgment, seeking dismissal of the remaining counts. Following oral argument, on August 16, 2016, in an oral opinion, Judge Douglas H. Hurd dismissed counts three and four with prejudice after determining that "there were [no] genuine issues of material fact in dispute" and "giving all [favorable] inferences" to plaintiff. The judge entered a memorializing order and this appeal followed.

A-0190-16T3

II.

On appeal, plaintiff challenges Judge Massi's dismissal of count two, pursuant to Rule 4:6-2(e), arguing the judge erred in dismissing his claim because, as a civil service employee, he had a property right in his employment that was protected by substantive due process under the NJCRA. We disagree.

Our review of a dismissal for failure to state a claim pursuant to Rule 4:6-2(e) "is plenary and we owe no deference to the trial judge's conclusions." State v. Cherry Hill Mitsubishi, Inc., 439 N.J. Super. 462, 467 (App. Div. 2015). "The inquiry is limited to 'examining the legal sufficiency of the facts alleged on the face of the complaint.'" Ibid. (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). Such motions "require the complaint be searched in depth and with liberality to determine if there is any 'cause of action . . . "suggested" by the facts[,]'" ibid. (quoting Printing Mart-Morristown, 116 N.J. at 746), and "to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim[.]" Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957). At this preliminary stage of the litigation, the court is not concerned with the ability of the plaintiff to prove the allegation in the complaint. Printing Mart-Morristown, 116 N.J. at 746.

11

Plaintiff's substantive due process claim in count two arises under the NJCRA, N.J.S.A. 10:6-2(c), which provides:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

The NJCRA was adopted in 2004 "for the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights[,] and to fill any gaps in state statutory anti-discrimination protection." Ramos v. Flowers, 429 N.J. Super. 13, 21 (App. Div. 2012) (quoting Owens v. Feigin, 194 N.J. 607, 611 (2008)). The elements of a substantive due process claim under the NJCRA are the same as under 42 U.S.C. §1983, which, at issue here, require a claimant to "identify a 'right, privilege or immunity' secured to the claimant by the Constitution or other federal laws of the United States." Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 363 (1996) (quoting 42 U.S.C. §1983). "To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process

clause and the government's deprivation of that protected interest shocks the conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).

In dismissing count two, Judge Massi relied on Nicholas v. Pa. State Univ., 227 F.3d 133, 144 (3d Cir. 2000), and Filgueiras v. Newark Pub. Sch., 426 N.J. Super. 449, 470 (App. Div. 2012), and concluded that, "even when drawing all inferences in favor of the [p]laintiff, [he] is not entitled to substantive due process protections stemming from his employment as a matter of law." The judge reasoned

> continued employment is not a fundamental right created by the Constitution which falls within the ambit of substantive due process. Therefore, [p]laintiff's claim must fail, as a matter of law, on the first prong of a substantive due process claim which requires the [p]laintiff to prove a protected property interest.

Like Judge Massi, we reject plaintiff's argument that his termination deprived him, without substantive due process, of a protected property interest in the form of his continued civil service employment. In Filgueiras, we rejected a similar contention. There, the plaintiff, a non-tenured public school teacher, brought claims of federal and state due process violations under the NJCRA when he was terminated without a public hearing. Filgueiras, 426 N.J. Super. at 455-54. We held plaintiff had "no property right to continued employment." Id. at 470. Likewise, the Third Circuit held in Nicholas, that a plaintiff's

"tenured public employment [was not] a fundamental property interest entitled to substantive due process protection." 227 F.3d at 142. Similarly, in Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 355 (App. Div. 1993), we clearly stated "an employee hired at will has no protected interest in his employment and may not prevail on a claim that his or her discharge constituted a violation of property rights."

Here, we agree with Judge Massi that, as a provisional civil service employee, plaintiff does not have a property interest in his continued employment, and thus was not entitled to substantive due process protections. Indeed, plaintiff acknowledged in his complaint that he was in a "working test period" at the time of his termination. See N.J.S.A. 11A:4-15(d). Even if we were to consider plaintiff a permanent career civil service employee, as he claims in his reply brief, such employees may be terminated for cause. See ibid; Melani v. Cty. of Passaic, 345 N.J. Super. 579, 586 (App. Div. 2001) (noting that while "permanent employees can be discharged or demoted only for cause, and . . . have pre-termination appeal and hearing rights[,] . . . provisional employees can be terminated at any time at the discretion of the employer"). Accordingly, count two of plaintiff's complaint alleging a substantive due process violation was properly dismissed.

Next, plaintiff argues that Judge Hurd erred in dismissing the remaining NJCRA and CEPA counts on summary judgment. We disagree.

We review a ruling on a motion for summary judgment de novo, applying the same standard governing the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Thus, we consider, as the motion judge did, "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

This standard compels the grant of summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged[,] and that the moving party is entitled to a judgment or order as a

matter of law." R. 4:46-2(c). "To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005). Applying the above standards, we discern no reason to reverse Judge Hurd's grant of summary judgment.

As to count three alleging a violation of plaintiff's free speech rights under the NJCRA, the judge determined that the claim was barred by "sovereign immunity," as well as "the CEPA waiver provision," given the "substantial relationship between count [three] and the CEPA claim" contained in count four. As to the CEPA count, initially, Judge Hurd determined that the "pre-termination" "suspensions [were] discrete acts" that "[fell] outside the one-year statute of limitations," and were therefore legally barred. The judge determined further that "no continuing violation" applied in the case. Turning to the termination claim and the facts leading up to it, after recounting the elements of a prima facie CEPA claim, the judge concluded there was "nothing in the case to show any type of causal connection between the whistleblowing activity" and the termination, no specifics "as to what specific whistleblowing activity was

related to this specific adverse employment action," and "nothing to show . . . that [plaintiff's] supervisors at the time of the termination were aware of any of these whistleblowing activities." The judge explained that, as a result, "a jury would be left to completely speculate as to any type of causal connection."

"The affirmative defense of qualified immunity protects government officials from personal liability for discretionary actions taken in the course of their public responsibilities," and "extends to suits brought under . . . the [NJCRA.]" Brown v. State, 230 N.J. 84, 97-98 (2017) (quoting Morillo v. Torres, 222 N.J. 104, 107-08 (2015)). Qualified immunity "is an immunity from suit rather than a mere defense to liability. . . ." Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Thus, under Brown, all public officials and employees are shielded from liability for claims arising under the NJCRA, "except those who are 'plainly incompetent or those who knowingly violate the law.'" 230 N.J. at 98 (quoting Morillo, 222 N.J. at 118).

Because the doctrine is intended to balance the need to hold public officials accountable and avoid excessive disruption of government arising from insubstantial claims, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell, 472 U.S. at 526.

A-0190-16T3

Here, although plaintiff filed suit against these defendants in their individual capacities, the record is clear that the allegations occurred while defendants were acting in their official capacities. Because defendants acted on behalf of the State, and the record does not support a violation of clearly established law, Judge Hurd correctly determined they were entitled to qualified immunity from plaintiff's freedom of speech claim in count three.

Additionally, plaintiff's CEPA claim in count four precludes a freedom of speech claim because "institution of an action in accordance with [CEPA] shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation under the common law." N.J.S.A. 34:19-8. "A claim must have a basis independent of the CEPA claim in order to be exempt from the waiver provision." Falco v. Cmty. Med. Ctr., 296 N.J. Super. 298, 318 (App. Div. 1996). Plaintiff's allegations in count three are essentially the same as those in count four. Thus, Judge Hurd correctly determined that the two claims were related and subject to the CEPA waiver provision.

Nonetheless, plaintiff argues that dismissal of the freedom of speech claim was improper because his case was not yet ripe for a CEPA election. He cites Ballinger v. Del. River Port Auth., 172 N.J. 586, 601-02 (2002), for the proposition that he should be able to make an election to proceed with the

freedom of speech claim despite dismissal of the CEPA claim. In <u>Ballinger</u>, the Court addressed "whether the statutory waiver is applicable if the CEPA claim is withdrawn or otherwise concluded prior to judgment on the merits." <u>Id.</u> at 601-02 (quoting <u>Young v. Schering Corp.</u>, 141 N.J. 16, 25-26 (1995)). The Court held that in that circumstance, the waiver did not apply. <u>Id.</u> at 602. Because the <u>Ballinger</u> holding is limited to circumstances in which the CEPA claim is unavailable or dismissed for reasons such as the expiration of a statute of limitations, it is inapplicable here, where the claim was dismissed on the merits.

We now turn to Judge Hurd's dismissal of the CEPA count. CEPA was enacted to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." <u>Abbamont v. Piscataway Twp. Bd. of Educ.</u>, 138 N.J. 405, 431 (1994). The statute provides, in pertinent part:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> . . . .
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity. . . ;

(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3(c).]

"Upon a violation of any of the provisions of this act, an aggrieved employee or former employee may, within one year, institute a civil action in a court of competent jurisdiction." N.J.S.A. 34:19-5. Notably, "[a]n employee's CEPA claim accrues on the date of his actual demotion, suspension or termination from employment." Villalobos v. Fava, 342 N.J. Super. 38, 50 (App. Div. 2001).

20

Plaintiff contends Judge Hurd erred in finding that the one-year statute of limitations related to when the whistleblowing actually occurred, rather than the retaliatory act, and failed to consider his previous disciplinary sanctions as a continuing violation of CEPA. We reject plaintiff's contention.

In Roa v. Roa, 200 N.J. 555 (2010), our Supreme Court made clear that

> some discrete acts, "such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify[]" . . . [and] "[e]ach . . . constitutes a separate actionable 'unlawful employment practice.'" Accordingly, for limitations purposes, a "discrete retaliatory or discriminatory act occur[s] on the day that it 'happen[s].'"
>
> [Id. at 566-67 (third, fourth and fifth alterations in original) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)).]

Thus, Judge Hurd correctly determined that each prior disciplinary sanction, which arose between 2005 and 2012, was a discrete act, and the statute of limitations had expired as to those acts. Accordingly, the judge correctly limited his review to plaintiff's May 3, 2013 termination, finding that only the termination fell within the one-year statute of limitations period, given the filing of the complaint on March 21, 2014.

To state a claim under N.J.S.A. 34:19-3(c), and establish the elements of a prima facie case, a plaintiff must introduce evidence sufficient to show that:

(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3[(c)]; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003).]

If the defendant advances a legitimate, non-retaliatory reason for the alleged retaliatory conduct, to survive summary judgment, the plaintiff must raise a genuine issue of material fact that the employer's explanation is pretextual. Donofry v. Autotote Sys., Inc., 350 N.J. Super. 276, 290-93 (App. Div. 2001); Klein v. Univ. of Med. & Dentistry of N.J., 377 N.J. Super. 28, 38-39 (App. Div. 2005).

Regarding the alleged whistleblowing activity, a CEPA plaintiff is not obligated to prove that defendants actually violated a law, regulation, or clear mandate of public policy. Rather, the plaintiff need only prove that he or she reasonably believed that to be the case. Dzwonar, 177 N.J. at 462.

[T]he objecting employee must have an objectively reasonable belief, at the time of objection or refusal to participate in the employer's offensive activity, that such activity is either illegal, fraudulent or harmful to the public health, safety or welfare, and that there is a substantial likelihood that the questioned activity is incompatible with a constitutional, statutory or

22

> regulatory provision, code of ethics, or other recognized source of public policy. Specific knowledge of the precise source of public policy is not required.
>
> [Mehlman v. Mobil Oil Corp., 153 N.J. 163, 193 (1998).]

However, a causal connection between the whistleblowing activity and the retaliation is required. This "can be satisfied by inferences that the trier of fact may reasonably draw based on circumstances surrounding the employment action," including temporal proximity between the protected conduct and the adverse employment action. Maimone v. City of Atlantic City, 188 N.J. 221, 237 (2006); Estate of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000); see also Schlichtig v. Inacom Corp., 271 F. Supp. 2d 597, 612-13 (D.N.J. 2003) (explaining that when determining whether plaintiff has produced prima facie evidence of causation, the focus is generally "timing and evidence of ongoing antagonism," but all circumstances should be considered). However, "[t]emporal proximity, standing alone, is insufficient to establish causation." Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 361 (App. Div. 2002).

Further, a plaintiff's whistleblowing must reflect conduct that he reasonably believed posed a "threat of public harm." Maw v. Advanced Clinical Commc'ns, Inc., 179 N.J. 439, 445 (2004) (quoting Mehlman, 153 N.J. at 188). In Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 529-31 (2013), a CEPA

plaintiff complained about minor violations of the corporate lunch and credit card policy. The Court made clear that "[v]ague and conclusory complaints, complaints about trivial or minor matters, or generalized workplace unhappiness are not the sort of things that the Legislature intended to be protected by CEPA." Id. at 559. Similarly, "[t]he offensive activity must pose a threat of public harm, not merely a private harm or harm only to the aggrieved employee." Maw, 179 N.J. at 445 (quoting Mehlman, 153 N.J. at 188). Moreover, "[a]dverse employment actions do not qualify as retaliation under CEPA 'merely because they result in a bruised ego or injured pride on the part of the employee.'" Beasley v. Passaic Cty., 377 N.J. Super. 585, 607 (App. Div. 2005) (quoting Klein, 377 N.J. Super. at 46). "CEPA's purpose is to prevent retaliatory action against whistle-blowers, it is not to 'assuage egos or settle internal disputes at the workplace.'" Ibid. (quoting Klein, 377 N.J. Super. at 45).

Here, plaintiff's purported whistleblowing concerned allegations of cronyism, missing supplies, unsanitary working conditions, and racial animosity among employees. These allegations do not expressly violate a specific law or public policy. Instead, they fall under Battaglia's prohibition against vague and conclusory complaints, and Maw's preclusion of private harms. Further, as Judge Hurd found, the record does not support a causal connection between the alleged whistleblowing and plaintiff's termination. Indeed, plaintiff

24                                                                    A-0190-16T3

acknowledges that he has no evidence to suggest that his final supervisor was even aware of the whistleblowing acts, many of which occurred several years before plaintiff's termination.

Even assuming plaintiff established the elements of a prima facie CEPA claim, defendant has shown a legitimate, non-retaliatory reason for plaintiff's termination, namely his numerous accrued disciplinary violations over the course of his employment. Under Donofry, 350 N.J. Super. at 290-93, plaintiff is obligated to show that these disciplinary violations were a pretextual basis for plaintiff's termination in order to survive summary judgment. Plaintiff's mere conjecture as to a broad conspiracy is insufficient to show the requisite pretext. Under New Jersey law, a plaintiff cannot claim that his substantiated disciplinary charges are retaliatory when he was afforded a hearing, during which he was represented by either a union representative or counsel, as plaintiff was here. See Beasley, 377 N.J. Super. at 607. "It would require a strong showing to 'transmute [a] defense to the disciplinary charges into an affirmative CEPA claim.'" Ibid. (alteration in original) (quoting McLelland v. Moore, 343 N.J. Super. 589, 608 (App. Div. 2001)).

To the extent we have not specifically addressed any of plaintiff's remaining arguments, we deem them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-0190-16T3

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0190-16T3